**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000100
25-FEB-2016
08:53 AM**

NO. CAAP-15-0000100

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF J CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 13-00022)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Mother-Appellant (**Mother**) appeals from the Order Terminating Parental Rights entered on February 11, 2015 in the Family Court of the First Circuit[1] (**family court**).

On appeal, Mother contends the family court erred in making Findings of Facts (**FOFs**) nos. 164, 165, 166, 179, 180, 195, and 198.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Mother's appeal is without merit.

In her opening brief, Mother does not contest the Findings of Fact/Conclusions of Law (**FOFs/COLs**) as presented in her points of error section, but asserts a number of other arguments related to the contested FOFs/COLs in her substantive argument. To the extent that some of the FOFs/COLs are not argued, Mother has waived these arguments. See Hawai'i Rules of

---

[1] The Honorable Steven M. Nakashima presided.

Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived."). We address only the points of error for which Mother provides substantive arguments.

## A. Premature Termination of Parental Rights

Mother asserts the termination of her parental rights was premature under Hawaii Revised Statutes (**HRS**) § 587A-27(a)(7) (Supp. 2015), because the children had been in foster custody for only twenty-two months at the time of the trial. HRS § 587A-27(a) states in relevant part:

> **§587A-27 Service plan.** (a) The service plan shall provide:
>
> . . . .
>
> (7) Notice to the parents that if the child has been in foster care under the responsibility of the department for an aggregate of fifteen out of the most recent twenty-two months from the child's date of entry into foster care, the department is required to file a motion to set a termination of parental rights hearing, and the parents' failure to provide a safe family home within two years from the date when the child was first placed under foster custody by the court, may result in the parents' parental rights being terminated[.]

Mother misinterprets HRS § 587A-27(a), which merely describes the requirements of a "service plan," including notice to the parent of the potential termination of their parental rights. HRS § 587A-27(a) does not set forth the time in which a termination of parental rights hearing may occur.

HRS § 587A-33 (Supp. 2015) is the applicable statute, which addresses termination of parental right hearings. HRS § 587A-33 provides in relevant part:

> **§587A-33 Termination of parental rights hearing.** (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> . . . .
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable time, <u>which shall not exceed two years from the child's date of entry into foster care;</u>
>
> . . . .

2

> (b) If the court determines that the criteria set forth in subsection (a) are established by clear and convincing evidence and the goal of the permanent plan is for the child to be adopted or remain in permanent custody, the court shall order:
>
> > (1) That the child's parent's parental rights be terminated;
> >
> > (2) Termination of the existing service plan and revocation of the prior award of foster custody;
> >
> > (3) That permanent custody of the child be awarded to an appropriate authorized agency;
> >
> > (4) An appropriate permanent plan; and
> >
> > (5) The entry of any other orders the court deems to be in the best interests of the child, including restricting or excluding unnecessary parties from participating in adoption or other subsequent proceedings.

(Emphasis added.) The statute requires that to terminate a parent's parental rights, the family court must find that it "is not reasonably foreseeable that the child's parent . . . will become willing and able to provide the child with a safe family home . . . within a reasonable time, . . . not to exceed two years from the child's date of entry into foster care[.]" HRS § 587A-33(a)(2). The timing of the termination of the parental rights hearing was appropriate under the statute. Mother's assertion that the termination hearing was premature because the children had been in foster care for only twenty-two months is without merit.

**B.  Domestic Violence Services Omitted From Mother's Service Plan**

Mother next asserts the family court "was clearly erroneous in making the [FOF] that [Mother] was provided a reasonable opportunity to reunite with her two children when [Petitioner-Appellee State of Hawai'i Department of Human Services (**DHS**)] did not make available to [Mother] domestic violence services that [DHS] believed was necessary before reunification." She elaborates, "the evidence is certainly clear and convincing that the [DHS] did not give [Mother] notice of all of the services required for reunification and a reasonable amount of time to complete those services." Mother seems to suggest that DHS required her to complete domestic violence

services, but did not include such services in the January 30, 2013 service plan (**Service Plan**).

DHS argues in response that "[e]ven if it was an error for [DHS] to not include domestic violence services in Mother's [S]ervice [P]lan, the error was harmless due to Mother's lack of participation in the services that were contained in the [S]ervice [P]lan."

Under HRS § 587A-11 (Supp. 2015), DHS is authorized to "enter into a service plan" upon "receiving a report that a child is subject to imminent harm, has been harmed, or is subject to threatened harm." The family court began ordering compliance with the Service Plan on March 15, 2013. The Service Plan recommended substance abuse assessment and services, ongoing drug monitoring, parenting education classes, psychological evaluation, and home-based services. Over the course of the next year and a half, the family court held a series of hearings in which it found Mother had made only limited progress with regard to the Service Plan and the modifications to the Service Plan.

The family court found in its FOFs/COLs that Mother had on numerous occasions failed to appear for urinalysis (**UA**) tests, failed to provide a sample for a UA test, or tested positive for methamphetamines. The family court also found:

> [FOF] 109. Mother has not completed a UA monitoring program, despite at least five referrals for the Hina Mauka UA monitoring program. She has not participated in UA monitoring since her failure to provide a sample on July 25, 2013. A no-show for a UA test is regarded the same as a positive/dirty test result.

> [FOF] 110. Mother has not done a psychological evaluation. [DHS] has been unable to refer Mother for a psychological evaluation due to her lack of a 90 day period of demonstrated sobriety.

> [FOF] 111. Mother was referred to the Comprehensive Counseling & Support Services ("CCSS") program for parenting education, outreach and home based services in May 2013. She attended assessment meetings with CCSS on October 4 and 10, 2013.

> [FOF] 112. Mother completed PARENTS, Inc. parenting classes on October 28, 2013.

> . . . .

> [FOF] 119. Mother has failed to compete outreach and home based services, despite at least 3 referrals to CCSS for outreach and home based services. She has not engaged

4

in outreach and home based services since she was discharged from CCSS on March 7, 2014.

[FOF] 120. Although she testified that she understood that it is crucial to participate in services in order to be reunified with the Subject Children, Mother was not engaged in any services at the time of the [motion to terminate parental rights] trial on February 11, 2015.

The family court did not err in finding "by abundantly clear and convincing evidence the [DHS] has demonstrated that Mother is not presently willing and able to provide the Subject Children with a safe family home, even with the assistance of a service plan" and also that "it is not reasonably foreseeable that Mother will become willing and able to provide the Subject Children with a safe family home, even with the assistance of a service plan, within a reasonable period of time . . . ." Mother does not provide any support for her assertion that DHS required her to complete domestic violence services to preserve her parental rights, but even if the completion of domestic violence services were a requirement, Mother failed to comply with substantial portions of the Service Plan. The evidence in the record supports the family court's finding that Mother was not willing and able to provide her children with a safe family home, even with the assistance of a service plan.

C. **Expert Testimony in March 15, 2013 Trial**

Mother contends the family court erred "when it allowed Ms. Gladys Bautista [(**Bautista**)] to testify as an expert in child welfare services during the adjudication trial on March 15, 2013 on the basis tha[t] she is employed as a social service worker by [DHS]." Mother argues that because Bautista is a human resources professional and not a social worker, Bautista is unqualified to testify as an expert.

Under HRS § 587A-19 (Supp. 2015), "[a] person employed by the department as a social worker in the area of child protective services or child welfare services shall be presumed to be qualified to testify as an expert on child protective or child welfare services." Bautista testified that she worked as an Assessment Social Worker with DHS in the Child Welfare Services branch and that her duties included determining child abuse and neglect.

Despite Mother's objections at trial based on the fact that Bautista's resume lists her as a "Human Services Professional," HRS § 587A-19 created a presumption that Bautista was qualified to testify as an expert based on her employment as a social worker for DHS. In addition, DHS presented evidence that Bautista had an undergraduate degree in sociology and a masters degree in counseling psychology, that she had worked as an Assessment Social Worker since 2005, that she had received additional training in the field of social work in the areas of assessment, child maltreatment, engaging with families, and substance abuse counseling, and that she had previously been qualified four or five times as an expert in child abuse and neglect during trial proceedings. Therefore, Mother's argument that Bautista should not have been allowed to testify as an expert is without merit.

Therefore,

IT IS HEREBY ORDERED that the Order Terminating Parental Rights entered on February 11, 2015 in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, February 25, 2016.

On the briefs:

Herbert Y. Hamada
for Mother-Appellant.

Erin K.S. Torres
Mary Anne Magnier
Deputy Attorneys General
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge

6